KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) | CASE NO. CV ___11-463_____ |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| REALTY ONE HOMES PLUS and JERRY M. GIESE, | ) ) ) | |
| Defendants. | ) ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of action against the Defendants Realty One Homes Plus and Jerry M. Giese, states and alleges as follows:

<u>NATURE OF THE ACTION</u>

1.  This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief and damages on the following bases:

VERIFIED COMPLAINT AND                    1
DEMAND FOR JURY TRIAL

a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

i.  Refused to sell or rent, or otherwise made unavailable or denied, a dwelling because of "familial status", 42 U.S.C. §3604(a);

ii.  Discriminated in the terms, conditions or privileges of the sale or rental of a dwelling because of "familial status", 42 U.S.C. §3604(b);

iii.  Made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination, or an intention to make any such preference, limitation, or discrimination, based on "familial status", 42 U.S.C. §3604(c); and

iv. Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Fair Housing Regulations, 24 C.F.R. §100 et seq.

c.  Negligence.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Boise, County of Ada, State of Idaho.

## PARTIES

3.  The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

2

and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff

serves housing consumers through, among other things, education on the fair housing laws and

assistance with complaints.

4.   The Defendant Realty One Homes Plus (hereinafter "Defendant Realty One"), is a

business in the State of Idaho.  Its principal place of business is 7310 Potomac Drive, Boise,

Idaho 83704.  Said Defendant is an unincorporated real estate sale and management business.

5.   The Defendant Jerry M. Giese (hereinafter "Defendant Giese") is the owner of the

Defendant Realty One.  Said Defendant is believed to reside at 2323 North Heights Drive, Boise,

Idaho, 83702-2833.

<u>STANDING OF PLAINTIFF</u>

6.   The Plaintiff has suffered damages as the result of the Defendants' actions and

omissions, including the diversion of the Plaintiff's past and future resources, lost economic

opportunity, and the frustration of the Plaintiff's mission.

7.   The Plaintiff's mission, as described above, has been frustrated by the Defendants'

practices because the Defendants' violations of the FHA communicate to housing consumers and

housing providers that discriminatory practices are permissible and that correctional remedies are

not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues

and to advance equal access to housing.

8.   The Plaintiff's mission has further been frustrated as the Defendants' violations of the

FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State

of Idaho.

9.   In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to

devote significant resources to identify, investigate, document and take action to correct the

VERIFIED COMPLAINT AND          3
DEMAND FOR JURY TRIAL

Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

10.  As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

<u>GENERAL ALLEGATIONS</u>

11.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-10 above.

12.  On or about the 21st day of March, 2011, J.H. and C.H. complained to the Plaintiff that they have applied for residency with several multi-family property owners in Boise, Idaho and that they have been denied housing due to the residence of their minor children.  They stated that the Defendants are property owners that have subjected them to such discrimination.

13.  J.H. and C.H. complained to the Plaintiff that they were told by the Defendants that they would not be permitted to rent an apartment from the Defendants because the apartment is on the second floor of their building and the Defendants do not rent apartments to families with children on the second floor of their buildings.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

4

14.  As the result of the complaint received from J.H. and C.H., the Plaintiff began an investigation of this matter.

15.  On or about the 8th day of April, 2011, the Plaintiff conducted telephonic testing of the Defendant Realty One and the Defendant Giese.  During the course of such telephonic testing, the Plaintiff's tester inquired with regards to an apartment for herself and her minor children.  The Defendants stated that they would not rent to the Plaintiff's tester either of the two apartments that are currently available because they are second story units and that they will not put children up above someone else.  The Defendants further stated that they have a policy of not renting second story apartments to families with children.

16.  The Defendants' conduct, as described above, constitutes discrimination on the basis of "familial status", as that term is defined at 42 U.S.C. §3602(k).

17.  In investigating this matter and as the result of the Defendants' discriminatory conduct, the Plaintiff has diverted its resources, lost economic opportunity, and its mission has been frustrated.

18.  As a result of the Plaintiff's investigation, it filed an administrative complaint with the United States Department of Housing and Urban Development (hereinafter "HUD") pursuant to 42 U.S.C. §3610 dated the 9th day of May, 2011.  Said administrative complaint currently remains pending with HUD.

19.  On or about the 17th day of May, 2011, counsel for the Plaintiff wrote to the Defendants to inform them of the filing of the HUD complaint.

20.  On or about the 7th day of June, 2011, the Defendant Giese contacted counsel for the Plaintiff to discuss the HUD complaint.  During the course of that telephone conference, the

KEN NAGY
Attorney at Law
Lewiston, Idaho

Defendant Giese admitted that the Defendants maintain a policy of not renting second story apartments to families with children.

21.  The Defendant Giese subsequently wrote two letters to counsel for the Plaintiff regarding this matter dated the 30th day of June, 2011 and the 16th day of August, 2011.  In response to the telephonic testing that was completed by the Plaintiff, in which the Defendants stated that they would not rent a second story apartment to a family with children, the Defendant Giese wrote in both letters that "I was considering the family living below this unit as well as other families in the building."

22.  Due to the ongoing nature of the Defendants' conduct by maintaining a policy of not renting second story apartments to families with children, said conduct constitutes a continuing violation.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "FAMILIAL STATUS" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

23.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-22 above.

24.  The Defendants have refused to sell or rent, or otherwise made unavailable or denied, a dwelling because of "familial status".  42 U.S.C. §3604(a).

25.  The Defendants have discriminated in the terms, conditions or privileges of the sale or rental of a dwelling because of "familial status".  42 U.S.C. §3604(b).

26.  The Defendants have made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination, or an intention to make any such preference, limitation, or discrimination, based on "familial status". 42 U.S.C. §3604(c).

VERIFIED COMPLAINT AND                    6
DEMAND FOR JURY TRIAL
                                                              **KEN NAGY**
                                                         **Attorney at Law**
                                                          Lewiston, Idaho

27.  The Defendants have engaged in interference in the exercise or enjoyment of rights granted the victims by 42 U.S.C. §§3603 and 3604.  42 U.S.C. §3617.

28.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

<u>COUNT TWO—NEGLIGENCE</u>

29.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-28 above.

30.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff, J.H. and C.H.

31.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff, J.H. and C.H.

32.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff, J.H. and C.H. by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq., as well as its implementing regulations provided at 24 C.F.R. §100 et seq.

<u>DAMAGES</u>

33.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-32 above.

34.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

35.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

36.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $11,293.48, which continue to accrue.

37.  The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $11,500.00.

38.  The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

39.  The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $12,293.48.

40.  In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, including J.H. and C.H.

41.  Said victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

42.  All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

43.  A Victims' Compensation Fund should be established in an amount to be determined to adequately compensate identified and as-of-yet unidentified victims of the Defendants'

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

   a. The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

   b. Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

   c. Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

   d. Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at

least two of the publication dates shall be a Sunday.  The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 1878 Overland Road, Boise, Idaho 83705; (2) DisAbility Rights Idaho, 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 505 North Main Street, Moscow, Idaho 83843; and (4) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.   Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.   Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting

VERIFIED COMPLAINT AND          10
DEMAND FOR JURY TRIAL

forth the factual basis of the claim.  The Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h.  After receiving the Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants.  When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court.  In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above.  No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendants from all claims related to the subject property.

i.  In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act.  Said education fund shall be administered by Idaho Legal Aid Services, Inc..

j.   The Defendants shall permit the Plaintiff, upon reasonable notice, to review any

records that may facilitate its determinations regarding the claims of allegedly

aggrieved persons.

44.  The Court should award to the Plaintiff and against the Defendants punitive damages

due to the intentional and willful nature of the Defendants' conduct in an amount to be

determined by the Court.

45.  The Court should enjoin the Defendants, their officers, employees, agents,

successors, and all other persons in active concert or participation with said Defendants, from

failing or refusing to comply with all requirements of the FHA and its implementing regulations.

46.  The Court should award to the Plaintiff and against the Defendants reasonable

attorney's fees and costs incurred in this action, as provided for by statute and court rule.

47.  The Defendants should be held jointly and severally liable for any and all damages,

including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council prays that the Court

enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations

of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in

compensation for its out-of-pocket expenses and past diversion of resources in the amount of

$11,293.48, which continue to accrue;

VERIFIED COMPLAINT AND           12
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $11,500.00;

D.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $12,293.48;

F.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 44 above;

G.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined by the Court;

H.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

K.  That the Court order any further and additional relief as the interests of justice may require.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a

trial by jury on all issues.

DATED this __30th__ day of ___September_____, 2011.

_____

KEN NAGY
ATTORNEY FOR PLAINTIFF

VERIFIED COMPLAINT AND                    14
DEMAND FOR JURY TRIAL

RICHARD MABBUTT, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc. the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

/s/

_____
RICHARD MABBUTT


STATE OF I D A H O   )
                 : ss
County of ___Ada___ )

I, ___Andrea Hathorn_____, a Notary Public for said state, does hereby certify that on the __30th__ day of __September_____, 2011, personally appeared before me RICHARD MABBUTT, Executive Director of the Intermountain Fair Housing Council, Inc. who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

      SEAL
   Andrea Hathorn
   Notary Public
   State of Idaho

/s/

Notary Public in and for the State of __Idaho____
Residing at: __Boise, Idaho_____
My commission expires: __June 13, 2017____


VERIFIED COMPLAINT AND       15
DEMAND FOR JURY TRIAL

## APPENDIX A:

## PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA. These categories are: (1) Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission. Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

### 1. Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff IFHC has incurred significant pre-litigation expenses as a result of the Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources. The Plaintiff IFHC has sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

16

preparation, counseling and other activities with regards to this matter.  As a result of these

activities, it has incurred expenses as follows:

|   |   |   |
|---|---|---|
| a. | Investigation and Counseling Costs: | $2,179.08 |
| b. | Educational efforts: | $5,768.00 |
| c. | Cost of Deferred Actions: | $2,179.08 |
| d. | <u>Litigation costs and fees (to date):</u> | <u>$1,167.32</u> |

Total Past Diversion of Resources:   $11,293.48

Further litigation of these matters will result in an increase in the Plaintiff IFHC's

diversion of resources, as well as other damages.

**2.  Future Diversion of Resources**

The Plaintiff IFHC has an affirmative duty to ensure the Defendants' ongoing compliance

with the FHA, with regards to both the subject property as well as any future developments in

which the Defendants may participate.  Such monitoring activities include site visits, training of

Defendants and their employees and agents, counseling of victims, and testing.

The Plaintiff IFHC expects to incur the following expenses as a result of the current

violations:

|   |   |
|---|---|
| a. Future Advertising Costs: | $5,500.00 |
| b. Cost of future training: | $2,000.00 |
| c. <u>Costs of Future Monitoring/Testing:</u> | <u>$6,000.00</u> |

Total Future Diversion of Resources:   $11,500.00

**3.  Lost Economic Opportunity**

Vigorous investigation and enforcement of fair housing complaints, including the

property at issue herein, has caused the Plaintiff IFHC to divert limited resources and manpower

VERIFIED COMPLAINT AND              17
DEMAND FOR JURY TRIAL

away from grant-writing activities.  The Plaintiff IFHC could reasonably expect to have obtained

funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so

diverted due to the Defendants' actions

      a.  Loss of Funding:                                $1,000.00

**4.  Frustration of Mission**

The investigation of the subject of this complaint, the counseling and training provided to

the community, and the preparation of the administrative complaint have caused the Plaintiff

IFHC to divert significant resources toward this proceeding and has undermined the work of

furthering fair housing in the state of Idaho.

As a direct result of the Defendants' discriminatory actions, the Plaintiff IFHC's mission

of furthering fair housing has been significantly frustrated, and the Plaintiff IFHC has had to

devote, and will continue to devote, additional resources in order to counteract the past and

ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier

to non-discriminatory housing, thereby undermining the mission of the Plaintiff IFHC in

guaranteeing fair housing to all residents of the state.  The Plaintiff IFHC has determined that it

will be necessary to educate housing consumers regarding fair housing requirements in order to

counteract the effects of the Defendants' failure to comply with the FHA.

The Plaintiff IFHC measures the damage to its frustration as the total monetary damages

that the Defendants' actions have cost to correct, including lost funding opportunities.

      a.  Frustration of Mission                           $12,293.48

## TOTAL DAMAGES

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

1.  Out-of Pocket Expenses and Past Diversion of Resources:         $11,293.48

2.  Future Diversion of Resources:                                  $11,500.00

3.   Lost Economic Opportunity:                                      $1,000.00

4.   Frustration of Mission:                                        $12,293.48

                                         Total Damages:   $36,086.96

VERIFIED COMPLAINT AND                    19
DEMAND FOR JURY TRIAL

**APPENDIX B:**

**CALCULATION OF VICTIMS' COMPENSATION FUND**

**I.  INTRODUCTION**

In addition to the damages incurred by the Plaintiffs, a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002 establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of*

VERIFIED COMPLAINT AND                  20
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

*America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order

entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

     Said orders, however, do not contain a description of how the amount of such a fund was

calculated.  The Victims' Compensation Fund that should be ordered herein should be calculated

according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

     A.  The number of units that are managed by the Defendants is currently unknown.

     B.  The number of months that the Defendants has managed property that is subject to the

requirements of the Fair Housing Act is currently unknown.

     C.  On average, each of the units could be expected to be rented to a new tenant every

twelve months.

     D.  It can reasonably be expected that, on average, at least one applicant for rental

housing of the Defendant encountered discrimination for each available unit managed by the

Defendant each year.

     E.  The amount of damages awarded to victims of familial status discrimination in

violation of the Fair Housing Act has been $10,000.00 or more.

     F.  The Plaintiff IFHC is the organization best equipped and situated to administer the

fund.

     G.  The Plaintiff IFHC should be compensated at its operational rate of $45.88 per hour

in the administration of the fund.

     H.  The number of hours that it will take to administer the fund and complete

compensation of victims can reasonably be expected to be three hours per identified victim.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of $1,000.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

a.  <u>Step One.</u>  The amount of funds that can reasonably be expected to be necessary to compensate identified victims should be calculated as follows: (the total number of units managed by the Defendant) **times** (the total number of months that the Defendant has managed housing subject to the FHA) **divided by** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **times** $10,000.00.

b.  <u>Step Two.</u>  The amount of funds that can reasonably be expected to be necessary incurred by the fund administrator for work performed in administering the fund should be calculated as follows: (the total number of units managed by the Defendant) **times** (the total number of months that the Defendant has managed housing subject to the FHA) **divided by** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **times** twelve (hours necessary to administer fund per victim) **times** $45.88.

c.  <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator for out-of-pocket expenses in administering the fund should be calculated as follows: (the total number of units managed by the Defendant) **times** (the total number of months that the Defendant has managed housing subject to the FHA) **divided by** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **times** $1,000.00.

d.  <u>Step Four.</u>  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

### 3.  Calculation of Victims' Compensation Fund

Applying the underlying principles, as described above, and the applicable figures, as set forth above, the victims' compensation fund should be established in an amount to be determined after all applicable figures are acquired from the Defendant through discovery in order to compensate identified and as-of-yet unidentified victims.